# BORRELLI & ASSOCIATES
## P.L.L.C.
www.employmentlawyernewyork.com

| | |
|---|---|
| 655 Third Avenue | 910 Franklin Avenue |
| Suite 1821 | Suite 200 |
| New York, NY 10017 | Garden City, NY 11530 |
| Tel. No. 212.679.5000 | Tel. No. 516.248.5550 |
| Fax No. 212.679.5005 | Fax No. 516.248.6027 |

February 25, 2019

<u>Via ECF</u>
The Honorable Steven Tiscione
United States Magistrate Judge for the
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re:  <u>Nolan v. City of New York et al.</u>, Case No. 19-cv-00187-ILG-ST

Dear Judge Tiscione:

  This office represents Plaintiff, William R. Nolan, in the above-referenced action brought against Defendants the City of New York ("City"), Joseph Reznick, individually, Raymond Spinella, individually, Lawrence Byrne, individually, Michael Barreto, individually, and Asif Iqbal, individually (collectively, "Defendants"), for violations of Plaintiff's First, Second, and Fourth Amendment rights under the Constitution of the United States, via-a-vis the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. §1983. We write in response to the City's letter motion to stay this action that it filed on February 20, 2019 (the "Motion"). In short, the City argues that due to pending IAB investigations of the individual defendants, and the criminal prosecution of Plaintiff, this case should be stayed because, respectively, the Corporation Counsel's office cannot represent or obtain information from the individual defendants until the IAB investigations are complete, and the interests of judicial economy support a stay of a parallel civil proceeding while a criminal prosecution is pending. For the reasons set forth below, Plaintiff opposes the City's Motion and respectfully requests that the Court permit this matter to proceed in the ordinary course.

  As an initial matter, the City's Motion contains significant misstatements regarding the nature of Plaintiff's claims in this action which, when viewed properly, undermine the bases for the City's Motion. Specifically, contrary to the City's assertion that this matter is "inextricably intertwined" with the criminal matter, none of Plaintiff's claims relate to the December 20, 2018 execution of a search warrant, seizure of firearms, or the arrest of Plaintiff, or the subsequent criminal prosecution of Plaintiff. Motion at p.1; *see also* Motion at p.3 (stating that "plaintiff's

claim sounding in unreasonable search and seizure is predicated on the confiscation of his firearms during the execution of a search warrant at his home."). Instead, all of Plaintiff's claims stem from the illegal suspension of Plaintiff's handgun license and seizure of his handguns that occurred more than nine months earlier, on March 14, 2018, and which was predicated solely on an illegal License Division Suspension Notice, not a search warrant, and which was all in retaliation for Plaintiff engaging in constitutionally protected speech. *See* Complaint [Dkt 1] ¶¶ 7, 50-53. Similarly, the City's assertion that "plaintiff does not challenge the December 20, 2018 arrest itself" is factually incorrect and a red herring. Motion at p3. Although filed after December 20, 2018, the Complaint is predicated on events that occurred well before that time, and thus it did not address Plaintiff's arrest at all. Moreover, Plaintiff is challenging the validity of the warrant, seizures, and his arrest in the court hearing his criminal case, which is, at this stage, the appropriate venue in which raise those challenges. Thus, because the City's Motion relies upon inaccurate assertions that Plaintiff's Complaint is related to the December 20, 2018 warrant, seizures, and arrest, and subsequent prosecution of Plaintiff, the Court should deny the request for a stay.

The Court should also deny the City's Motion because the criminal prosecution of Plaintiff is not a parallel criminal proceeding to this federal civil rights action. While Plaintiff's Complaint sets forth a significant amount of background information that might possibly overlap with issues related to the criminal prosecution, the material factual and legal issues presented in both cases are distinct and do not support the City's Motion for a stay.[1] *See Parker v. Dawson*, 2007 WL 2462677, at *4 (E.D.N.Y. Aug. 27, 2007) (Bianco, J.) (citing *Volmar Distrib., Inc. v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) ("[T]he most important fact [in deciding to grant a stay] at the threshold is the degree to which the civil issues overlap with the criminal issues.")). The relevant issues in the civil matter include: (1) Plaintiff engaged in protected activity by sending emails to Defendants Reznick and Spinella; (2) Plaintiff's handgun license was suspended, and his handguns were seized, on March 14, 2018; (3) the Suspension Notice issued to Plaintiff relied upon the unconstitutional 38 RCNY §5-30(d), which had been enacted by the City; (4) the Suspension Notice also contained material misstatements of the language of 38 RCNY §5-30(d); (5) immediately after the seizure of his handguns, Plaintiff was given a Cease & Desist letter from Defendant Byrne, on behalf of Defendants Reznick and Spinella, which expressly referenced Plaintiff's protected communications; and (6) Defendants actions amount to an illegal deprivation of Plaintiff's constitutional rights in retaliation for his exercising his First Amendment rights to free speech and to redress grievances to the government, in addition to violations of the second and fourth amendments in and of themselves. None of these issues overlap with the criminal case, which is predicated on a completely different set of events. Indeed, the cases that the City cites in support of its Motion all involve civil and criminal proceedings that arose out of the same event. *See Wallace v. Kato*, 549 U.S. 384 (2007) (criminal prosecution and §1983 claims both arose out of the interrogation of plaintiff and his arrest for murder); *U.S. v. Kordel*, 397 U.S. 1 (1970) (civil

---

[1] Plaintiff, however, reserves his right to amend his Complaint if it is later established that the actions taken on December 20, 2018, were further acts of retaliation in violation of his First Amendment rights.

enforcement and criminal prosecution both arose out of company's misbranding of drugs); *Johnson v. N.Y. City Police Dep't*, 2003 WL 21664 (S.D.N.Y. July 16, 2003) (criminal prosecution and §1983 claims arose out of illegal search of Plaintiff's car and his subsequent arrest); and *Estes-El v. Long Island Jewish Medical Center*, 916 F.Supp. 268 (S.D.N.Y. 1995) (criminal prosecution and §1983 claims arose out of plaintiff's arrest for assault). The City has not provided any support for its request to stay this action based upon the existence of an unrelated criminal case. Moreover, given the relatively narrow scope of the issues presented here, the Court could issue a protective order prohibiting Defendants from using discovery to advance the unrelated criminal case, which is a much less burdensome option than staying Plaintiff's civil action entirely.

Additionally, requesting a stay in order to allow IAB to complete investigations into the actions of the five individual defendants, [2] one of whom is the head of IAB whom Plaintiff alleges was directly responsible for the retaliatory actions against him, is ironic to say the least. Defendants retaliatory actions stem in large part from Plaintiff seeking to redress the intentional failures of IAB to properly investigate multiple complaints that he had made over the course of two-plus-years. Given the clear conflicts-of-interest and incentives for IAB to delay, staying this action to await IAB's decision would inflict an undue burden and hardship on Plaintiff, whose position is that a full and fair investigation into the retaliatory actions that Defendants took against him, as would occur through civil discovery and trial, is the fairest and most efficient way to resolve this matter. This portion of the City's argument also appears to be premature in that it does not allege that any of the individual defendants have requested representation or followed the procedures set forth in General Municipal Law §50-k (2) & (4). Moreover, the fact that the Corporation Counsel may not be able to represent the individual defendants does not preclude the individual defendants from obtaining their own counsel or from responding to the claims brought against them as a result of their own intentional misconduct, as any other defendant would be required to do. Indeed, Plaintiff would consent to a reasonable extension of time to sort that out.

Finally, in any event, there is no reason to delay a determination of Plaintiff's claim that 38 RCNY §5-30(d) is facially unconstitutional. The Court is fully able to review and decide upon that claim, which is purely a question of law. Based upon the above, Plaintiff respectfully requests that the Court deny the City's Motion in its entirety.

We thank the Court for its kind attention to this matter.

Respectfully Submitted,

Thomas R. Price, Esq.

---

[2] The City does not address Plaintiff's complaint to the New York City Department of Investigations ("NYCDOI") on June 19, 2018 regarding the conduct of Defendants Reznick and Barreto, as well as other License Division officers, or that the NYPD refused to cooperate with the NYCDOI investigation. Compl. ¶ 63. Additionally, the City does not explain why the NYCDOI investigation has apparently remained open, but not actively investigated, for over eight months at the time of this filing. Compl. ¶ 64.