# BORRELLI & ASSOCIATES

## P.L.L.C.

www.employmentlawyernewyork.com

| | |
|---|---|
| 655 Third Avenue | 910 Franklin Avenue |
| Suite 1821 | Suite 200 |
| New York, NY 10017 | Garden City, NY 11530 |
| Tel. No. 212.679.5000 | Tel. No. 516.248.5550 |
| Fax 212.679.5005 | Fax No. 516.248.6027 |

June 27, 2019

*Via ECF*
The Honorable Steven Tiscione
United States Magistrate Judge for the
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    *Nolan v. City of New York et al.*, Case No. 19-cv-00187-ILG-ST

Dear Judge Tiscione:

This office represents Plaintiff, William R. Nolan, in the above-referenced action brought against Defendants, the City of New York ("City"), Joseph Reznick, individually, Raymond Spinella, individually, Lawrence Byrne, individually, Michael Barreto, individually, and Asif Iqbal, individually, (collectively, "Defendants"), for violations of Plaintiff's First, Second, and Fourth Amendment rights under the Constitution of the United States, via-a-vis the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983. In brief, Plaintiff claims that he has been, and continues to be, retaliated against by members of the New York Police Department ("NYPD") for complaints that he filed with the Internal Affairs Bureau ("IAB") regarding the NYPD's failure to properly investigate and act upon complaints of aggravated harassment that he had filed with the 121st Precinct in Staten Island. As a result of Plaintiff's complaints, and emails that he sent to NYPD and IAB officers attempting to have the complaints properly addressed, the Defendants retaliated against Plaintiff by suspending his firearms license and confiscating his firearms, in violation of his First Amendment rights to free speech and to redress grievances, his Second Amendment right to keep and bear arms, and the Fourth Amendment prohibition against unlawful seizures, each made applicable to the Defendants vis-à-vis the Due Process Clause of the Fourteenth Amendment of the United States Constitution. We write now to respectfully request a partial lifting of the stay currently in place in this matter so that Plaintiff may serve non-party subpoenas on the entities identified below, as well as to request that the Court require counsel for Defendant City, if the City intends to seek another extension of the stay, to provide an offer of proof regarding the existence and status of the alleged IAB investigations into the individual defendants when it submits its next status report by July 26, 2019.

Additionally, Plaintiff requests that the Court schedule a status conference after it receives the July 26, 2019 status report, in order to allow Plaintiff to oppose the continuation of the stay either in whole or in part, to at least allow Plaintiff to pursue his claims challenging the constitutionality of Section 5-30(d) of Article 38 of the Rules of the City of New York ("38 R.C.N.Y. § 5-30(d)") contained in his Complaint, which are not at all affected by the IAB investigation.

Plaintiff makes his request for a partial lifting of the stay, and authorization to serve non-party subpoenas, because, since February 21, 2019, Mr. Nolan has had multiple bank and credit card accounts closed without explanation or warning. Specifically, on February 21, 2019, Santander Bank closed three of Mr. Nolan's bank accounts without his knowledge. Similarly, on April 22, 2019, Citibank closed three of Mr. Nolan's credit card accounts, consisting of Costco, Sears, and Best Buy credit cards, issued through Citibank, and Mr. Nolan's Macy's department store credit card, issued by Department Stores National Bank, was also closed the same day, all without his knowledge or a prior warning. Plaintiff's attempts to obtain explanations for these closures have so far met with little in the way of a substantive explanation for the closures other than acknowledgements that the accounts were closed after the entities became aware of the criminal charges against Mr. Nolan. *See e.g.*, Exhibit A (May 30, 2019 letter from Santander stating that the bank is not required to provide a reason for the account closures but noting that Mr. Nolan "was the subject of a December 29, 2018 *New York Post* article entitled 'Ex-detective with 's—t list' caught with weapons stockpile at home'" without explaining how they became aware of the article or how they determined that Mr. Nolan was a Santander customer from the article); Exhibit B (May 28, 2019 letter from Citibank stating that "[d]uring a recent review of your accounts, we discovered information suggesting you were arrested and charged with criminal possession of a weapon, among other charges. As a result, your above-referenced accounts were closed on April 22, 2019."). However, none of the entities have explained how they became aware of the criminal charges, and notably criminal history is not part of a credit report. Plaintiff reasonably believes, based upon his twenty years of experience in the NYPD and IAB, *see* Complaint ¶¶ 2 and 25, that his financial accounts have been targeted by someone with access to the financial information that was stored on his computer and other electronic devices that the NYPD seized on December 20, 2019, and that the closures are further acts of retaliation taken against him by some or all of the Defendants in this case. Plaintiff therefore requests that the Court authorize the issuance of subpoenas on the financial institutions identified herein in order to compel them to provide documentation related to their decisions to close Mr. Nolan's accounts, as well as to appear for depositions should the documents produced not provide complete answers. Given the fact that these financial account closures are directly related to the criminal charges against Plaintiff, the likelihood that they are being initiated as the result of information provided by one or more of the Defendants, or someone acting on their behalf, and the impact that these actions are having on Plaintiff, Plaintiff cannot wait indefinitely until the stay is lifted for the opportunity to address these issues.

Additionally, Plaintiff respectfully requests that the Court order counsel for the City, should it seek to continue the stay, as part of its next status report to be filed on or before July 26, 2019, to provide proof that IAB has in fact opened, and is actively pursuing, investigations into the individual defendants as asserted as part of the City's basis for seeking and maintaining the stay in this matter. Status Report Order dated May 10, 2019. Specifically, Plaintiff requests that the City be required to provide the relevant IAB investigative files to the Court for an *in camera* review. Again, based upon Mr. Nolan's extensive experience working in the NYPD, and IAB specifically, his position is that this is a stall tactic designed to prevent him from pursuing his civil claims, which he remains fully committed to pursuing despite the pending criminal case against him. As Plaintiff previously stated in his February 25, 2019 letter to the Court opposing the City's motion for a stay, allowing the Defendants to indefinitely delay Plaintiff's civil action based, in part, on the assertion that IAB must first conclude its investigations into the individual defendants, one of whom, Joseph Reznick, is the Deputy Commissioner of IAB, is ripe for abuse and a clear conflict of interest. Other Courts have recognized this conflict in other contexts. For example, in *Floyd v. The City of New York*, 739 F. Supp. 2d 376, 380 (S.D.N.Y. 2010), the court required the City to produce IAB investigative files for *in camera* review to determine if there were documents that were relevant to the plaintiffs' civil rights action against the City for the NYPD's alleged policies of racial-profiling and quotas. In so doing, the court stated that just because "an investigation is open does not guarantee protection from disclosure; otherwise, a party could simply keep an investigation open during the pendency of a lawsuit in order to avoid disclosure." *Id.* at 381. While Plaintiff is not, at this time, seeking to break the law enforcement privilege against disclosure, which was the issue in *Floyd*, the court's analysis in that case, in which it ultimately required the disclosure of some IAB materials to the plaintiffs themselves (which Plaintiff here is not seeking), is equally applicable here. As the *Floyd* court also noted, "courts must vigilantly review an assertion of the privilege and must often conduct an *in camera* inspection of the materials in question." *Id.* at 379. Plaintiff's request that the City be required to produce documents for an *in camera* review, particularly given that counsel for the City has previously acknowledged that he has not actually been privy to those files and is only relaying what he has been told by the NYPD, is reasonable and limited to ensure that Defendants are not misrepresenting the existence of such an investigation, or keeping one open simply to avoid Plaintiff's lawsuit.

Finally, Plaintiff wishes to bring to the Court's attention the March 22, 2019 decision in *Avitable v. Beach*, 2019 WL 1302858, at *14 (N.D.N.Y. 2019) (citing *District of Columbia v. Heller*, 554 U.S. 570, 582 (2008)), which held that "New York's sweeping prohibition on the possession and use of tasers and stun guns by all citizens for all purposes, even for self-defense in one's own home, must be declared unconstitutional in light of *Heller*." *Id.* (issuing an injunction against the New York State Police and its "officers, agents, servants, employees, and all persons in active concert or participation with the New York State Police [] from enforcing New York Penal Law § 265.01(1) as applied to 'electronic dart guns' and 'electronic stun guns.'"). Among the charges that Plaintiff faces in his criminal case are two counts of violating New York Penal Law § 265.01(1), which the *Avitable* court struck down. Nonetheless, even though that case was

apparently not appealed, the Richmond County District Attorney's Office has inexplicably not withdrawn those charges against Plaintiff. During the March 8, 2019 motion hearing on the City's request for a stay, this Court stated that any substantive changes to the criminal matter, or the status of the alleged IAB investigation, could affect the Court's decision on whether or not to maintain the stay in the future. As such, Plaintiff submits this information for the Court's consideration of the next application to extend the stay, and also requests that the Court schedule a status conference for a date after the City submits its report on July 26, 2019, so as to allow Plaintiff to argue why the stay should be lifted in whole, or at least in part with respect to his claims that 38 R.C.N.Y. § 5-30(d) is unconstitutional, which claim is strengthened even further by the court's decision in *Avitable*.

We thank the Court for its kind attention to this matter.

Respectfully Submitted,

Thomas R. Price, Esq.

To:    All counsel of record (*via ECF*)

4